IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRIAN MAUER,<br><br>               Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Foreign Corporation;<br><br>               Defendant. | 8:19CV410<br><br>MEMORANDUM AND ORDER |

Defendant moved for a protective order, (Filing No. 52), claiming documents requested in Plaintiff's discovery and withheld by Union Pacific are protected from disclosure under the attorney-client privilege and/or attorney work-product doctrine. The documents at issue, files from defendant's in-house legal department regarding Mauer's employment termination, were filed under seal for *in camera* review. (Filing No. 55). For the reasons discussed below, UPRR's motion will be granted in part and denied in part.

DISCUSSION

Plaintiff has responded to UPRR's motion, noting that communications with or by in-house counsel related to approving or disapproving Plaintiff's termination constitute business advice, not legal advice, and only those communications from in-house counsel made for the purpose of "securing legal advice" are protected by the attorney client privilege. (Filing No. 58, at CM/ECF p. 3). As to the work product doctrine, Plaintiff states the threshold question is whether the document was "prepared in anticipation of litigation," and whether upon review of the documents, the opposing party could understand the attorney's strategies and legal impressions. (Filing No. 58, at CM/ECF p. 14). Plaintiff further argues

that UP has placed the reason for Mauer's termination at issue and by doing so, it has waived any confidentiality in the communications. (Filing No. 58, at CM/ECF p. 13).

The attorney-client privilege protects a corporate employee's communication if: 1) the communication was made for the purpose of securing legal advice; 2) the employee making the communication did so at the direction of a corporate superior; 3) the superior made the request so that the corporation could secure legal advice; 4) the subject matter of the communication was within the scope of the employee's corporate duties; and 5) the communication was not disseminated beyond those persons who, because of the corporate structure, needed to know its contents. In re Bieter Co., 16 F.3d 929, 935 (8th Cir. 1994) (quoting Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir. 1977)). UPRR has the burden of proving the requested documents are privileged and that the privilege was not waived.

Here, Plaintiff argues that when in-house counsel advises on employee discipline, including termination, they are providing business advice and not legal advice protected by the attorney-client privilege. But not all advice offered by in-house counsel, including advice stating termination is an acceptable response to Plaintiff's arrest, is business rather than legal advice. The essence of providing legal advice is applying the facts to the law and providing an opinion to the client on how to lawfully proceed. Whether provided by in-house or outside counsel, an attorney offers legal advice when providing opinions in response to supervisory personnel questions on whether termination is legally allowed, or is appropriate upon weighing the company's legal exposure from the employee if fired, or from third parties if the employee is retained. A contrary result would certainly dissuade employers from having full and frank communications with counsel to

2

encourage compliance with the law. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985).

Plaintiff further argues that the work product doctrine provides no basis for withholding the documents withheld by UPRR. Under Fed. R. Civ. P. 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." To determine whether a document was prepared in anticipation of litigation, the court must consider whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Simon v. G. D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). But "there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation." Simon, 816 F.2d at 401

Having closely examined the documents filed for *in camera* review, along with the redactions from documents filed by Plaintiff (see Filings 57-3 & 57-4), the court finds that other than the documents filed with this order, many pages of which have redactions applied by the court, the documents presented for *in camera* review are privileged. I further find UPRR redacted privileged and/or work product information from filings 57-3 and 57-4. The documents and redactions this court order protects include communications between railroad supervisory personnel and UPRR's in-house counsel seeking or providing legal guidance. The personnel requesting the advice were tasked with how, from an employment perspective, the railroad should respond to Mauer's arrest for possession of illegal drugs. These supervisory employees provided information to counsel, and UPRR's attorneys provided an opinion based on the relevant law. The documents (primarily emails) were disseminated among only legal counsel

3

and those employees involved in deciding and implementing the railroad's response to Mauer's arrest.

In addition, the undisclosed documents indicate UPRR anticipated that Mauer may choose to litigate his termination, and several of the communications were prompted by emails and letters sent to UPRR from Mauer's criminal defense counsel. The record establishes that UPRR was anticipating litigation from the moment it began to consider and determine its response to Mauer's arrest, and in-house counsel offered legal opinions on that issue. The documents reflecting these communications are work product.

The court therefore finds that other than the documents and redacted documents filed with this order, and filings 57-3 and 57-4 as redacted by UPRR and already in Plaintiff's possession, the documents and redactions withheld by UPRR are protected under the attorney-client privilege and work product doctrine.

Plaintiff argues UPRR waived any privilege or work product protection by placing the information at issue in the case. Plaintiff asserts:

> UP has placed the reason for Mauer's termination and the approval process at issue in this case. UP has asserted Mauer can be terminated for any reason but refuses to identify in discovery who actually made the decision to fire Mauer so that Mauer can inquire as to whether his termination was based upon defamatory statements. UP has used documents it claims are privileged to interrogate Mauer without disclosing the portions of those documents that may aid Mauer's case. UP cannot be allowed to use its own documents and at-will employment as a sword while shielding the actual reason for Mauer termination behind privilege.

([Filing No. 58, at CM/ECF p. 13](#)).

UPRR is not using its attorney-client communications as a sword and a shield: UPRR did not place those communications at issue by stating Plaintiff, an at-will employee, can be terminated for any reason, and UPRR has not asserted the advice of counsel as an affirmative defense to the defamation issues in this case. And whether at a deposition or otherwise, disclosing a document redacted to exclude privileged and work product information while disclosing the fact information within that document does not waive confidentiality as to the redacted information.

Plaintiff argues he is entitled to otherwise privileged information to determine who made the decision to fire Plaintiff and whether that decision was based on defamatory statements. Alleged defamation is Plaintiff's only remaining claim. The elements of that claim include: 1) a false and defaming statement concerning the plaintiff, 2) an <u>unprivileged</u> publication to a <u>third party</u>, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. (Filing No. 31, at CM/ECF p. 13) (emphasis added). Having reviewed the withheld documents *in camera*, the court finds the recipients of the privileged emails and documents were solely UPRR supervisory personnel, including in-house counsel, tasked with providing guidance and/or deciding how to respond to Mauer's arrest. While Plaintiff seeks to use the communications between UPRR's in-house counsel and relevant supervisory personnel in this lawsuit,[1] UPRR has not. And by maintaining the confidentiality of these communications, UPRR has not placed them at issue in this case.

---

[1] I have also reviewed the alleged defamatory statements within Plaintiff's complaint. Those statements are not in the undisclosed documents, the redactions from the attached documents, or the redactions from filings 57-3 and 57-4.

I therefore find that as to the communications and documents protected by this order, UPRR has not waived the confidentiality afforded by the attorney client privilege and work product doctrine.

Accordingly,

IT IS ORDERED:

1) UPRR's motion for protective order, (Filing No. 52), is granted in part and denied in part.

2) The documents and redacted documents attached hereto are not privileged or protected from disclosure under the work product doctrine.

3) All other documents, the redactions made by the court, and the redactions made by UPRR in filing nos. 57-3 and 57-4 are protected from disclosure as privileged and/or work product communications.

Dated this 25th day of October, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge